IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| CHRISTINA BROWN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action File No. |
| v. | ) |
| | ) |
| KINGSLAND POLICE OFFICER | ) |
| MICHAEL GONZALEZ, | ) |
| | ) |
| Defendant. | ) |

# COMPLAINT

COMES NOW, Plaintiff CHRISTINA BROWN, in the above captioned action, by and through her undersigned counsel of record, and files this Complaint and request for damages and respectfully shows the Court the following:

## JURISDICTION AND VENUE

1.

Plaintiff is a resident of the City of Woodbine, Camden County, and the State of Georgia and submits herself to the jurisdiction and venue of this Court.

2.

At all times relevant hereto, Defendant Michael Gonzalez was acting under color of state law in his capacity as a law enforcement officer employed by the City of Kingsland. Defendant Gonzelez is sued in his individual capacity.

3.

Defendant Gonzalez is, and at all times herein mentioned, a resident of Glynn County, Georgia, who may be served at his last known address, 5304 Alexander Loop, Brunswick, Georgia 31525-9037.

4.

This action is based upon the tortious acts and/or omissions and civil rights violations committed by Defendant Gonzalez within the confines of Camden County, Georgia.

5.

This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 over Plaintiff's claims under the U.S. Constitution, which are brought both directly and under 42 U.S.C. § 1983 ("§ 1983").

6.

This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because it is so related to the federal claims that it forms part of the same case or controversy under Article III of the U.S. Constitution.

7.

By virtue of the facts contained herein, this Court has jurisdiction and venue of the parties.

## **INTRODUCTION**

8.

On November 24, 2022, Defendant Gonzalez's illegally arrested and imprisoned Plaintiff, charging her with two offenses. Defendant Gonzalez booked Plaintiff into the Camden County Detention Center. Plaintiff was imprisoned for several hours before she posted bail. On April 5, 2023, Plaintiff's charges were dismissed. By his own admission, as reflected in his body camera

footage, Defendant Gonzalez made the decision to arrest Plaintiff because she would not "shut the f*ck up." The morning after Plaintiff's arrest, a local news organization published her booking photograph. Plaintiff's church later banned her from all service positions and excommunicated her from certain circles within the church. Plaintiff was blocked from picking her stepson up from school, and the mother of Plaintiff's stepson initiated legal action to permanently change and limit the prior shared custody arrangement. Therefore, Plaintiff seeks compensatory and punitive damages against Defendant Gonzalez.

## FACTS

9.

On the evening of November 24, 2022, Plaintiff Mrs. Brown was a patron of the Outerbanks Sports Bar and Grill ("Outerbanks") in Kingsland, Georgia.

10.

Plaintiff went there to socialize and sing karaoke. Mrs. Brown received poor service throughout the evening.

11.

She informed the bar manager Nicholas McCoy of the poor service, who responded with a derogatory comment.

12.

Mrs. Brown responded and then attempted to leave. However, her credit card was behind the bar, and her phone was on the bar countertop.

13.

In attempting to obtain her things, Mrs. Brown was attacked by Outerbanks' employee Danielle Walton. (Outerbanks Surveillance Video 1, 1:18-2:10). Specifically, Ms. Walton pushed and shoved Mrs. Brown into a solid wooden booth.

14.

Shortly after Walton attacked Brown, the Outerbanks' manager and presumed owner Mr. McCoy grabbed Mrs. Brown by the hair, flung her to the floor, and struck her in the head. (Outerbanks Surveillance Video 2, 3:15-3:30).

15.

Mrs. Brown suffered a concussion and ruptured eardrum as a result of the assault and battery by Walton and McCoy.

16.

The police were called.

17.

Kingsland Police Officers Gonzalez, Thornton, and Nordquist arrived at the scene.

18.

One of the first eyewitnesses stated to Defendant Gonzalez, "The dude who runs the bar [Mr. McCoy], he's my brother. [Mrs. Brown] ain't hit nobody. I was just trying to get her ID and phone back for her, and they were jumping on her." (Gonzalez Body Camera, 6:36)

19.

Another eyewitness, Kevin Moore, immediately corroborated that version of events to Defendant Gonzalez, "I was there. I seen everything…I was trying to help her get out of the bar, but everyone's been drinking, and [Mr. McCoy's] not supposed to be drinking on the job

obviously. I watched [Mr. McCoy] deck [Mrs. Brown] in the face. And the older woman [Ms. Walton] decked [Mrs. Brown] in the face. And [Mr. McCoy] hit me in my face." (Gonzalez Body Camera, 6:52).

20.

Neither eyewitness account was included in Officer Gonzalez's police report of the incident.

21.

Despite these eyewitness accounts, Officer Gonzalez quickly began expressing animus toward Mrs. Brown.

22.

For example, while Mrs. Brown was attempting to explain what happened, Officer Gonzalez stated, "Do you want me to arrest you [Mrs. Brown] right now? … You need to calm down. Calm down. Calm down. You [Mr. Moore] need to talk to her real quick before I arrest her ass." (Gonzalez Body Camera, 9:04).

23.

Officer Gonzalez's obvious personal dislike of Mrs. Brown is also highlighted through the preferential treatment Officer Gonzalez showed Ms. Walton compared to Mrs. Brown.

24.

Within thirty minutes of arrival, the Officers determined that Mrs. Brown was not guilty of fighting in the bar. Instead, they found that Ms. Walton, in fact, committed battery against Mrs. Brown and was fighting in the bar.

25.

Knowing these facts, Officer Gonzalez stated to the other officers, "I don't know what to write [Mrs. Brown] for. Part of me **_wants_** to write [Mrs. Brown] for disorderly conduct…[but] I'm also **_considering_** citing Danielle [Ms. Walton]." (Gonzalez Body Camera, 29:35-30:45)

26.

Officer Gonzalez later placed Mrs. Brown under arrest, but Ms. Walton was only given a citation. While delivering the citation to Ms. Walton, Officer Gonzalez stated to Ms. Walton, "Trust me when I tell you this is going to be slap on the hand…She's [Mrs. Brown's] going to jail, just so you know." (Gonzalez Body Camera, 47:24 – 48:15)

27.

By his own admission, Officer Gonzalez made the decision to arrest Mrs. Brown because of her speech and his personal dislike of her, rather than anything she did.

28.

In the minutes before the arrest, Mrs. Brown was speaking to the Officers. She asked for medical attention and complained that Officer Gonzalez threatened to arrest her, despite the fact that she was the victim of a battery.

29.

Officer Gonzalez attempted to interrupt Mrs. Brown, and she stated, "No, stop. Listen to me. I have a right to speak." Officer Gonzalez immediately took out his handcuffs, restrained Mrs. Brown, and placed her under arrest. (Gonzalez Body Camera, 34:55-35:35).

30.

In reflecting on the decision to make the arrest, Officer Gonzalez later commented, "She should have just shut the f*ck up…Telling me 'No' and 'be quiet,' no. I ain't having that." (Gonzalez Body Camera, 44:40).

31.

Officer Thornton confirmed the reasoning for placing Mrs. Brown under arrest, "We was fixing to write everybody a citation and everyone go home…Her coming over here and starting up – we're going to take her to jail for that." (Nordquist Body Camera, 1:45 – 2:04).

32.

Disagreeing with the Officers' decision to arrest Mrs. Brown, eyewitness Kevin Moore again attempted to explain what happened to the Officers, "She was trying to leave, and they attacked her…the elder lady [Ms. Walton] was shoving her out the bar…the [Mr. McCoy] attacked her. I watched it. She's got a knot on her head. I was standing right behind her, and [Mr. McCoy] almost hit me in my face…. you don't hit a woman, and that's what he did. He grabbed her by her hair, and he decked her in the f*cking head….and that's the truth." (Nordquist Body Camera, 5:20 – 6:45)

33.

Again, Defendant Gonzalez failed to include Moore in the Police Report for the incident – or even get Moore's contact information.

34.

Shortly after arresting Plaintiff, the officers transported her to the Camden County Campus of the Southeast Georgia Health System for an evaluation of her head injury.

35.

Before and during the medical evaluation, Plaintiff repeatedly requested that the officers or medical providers administer drug and alcohol tests to confirm that she was sober.

36.

The officers, including Defendant Gonzalez, denied each of Plaintiff's requests for drug and alcohol tests.

37.

After the medical evaluation, the officers transported Plaintiff to the Camden County Detention Center, where she was booked.

38.

Plaintiff spent several hours imprisoned in the Camden County Detention Center before she was released on bail.

39.

The morning after Mrs. Brown's arrest, a social media news organization published Mrs. Brown's booking photograph.

40.

The booking photo quickly spread through the local community.

41.

Mrs. Brown was banned from serving in her church and excommunicated from certain circles within the church.

42.

She was temporarily blocked from picking up her stepson at school, and the mother of Mrs. Brown's stepson sought to legally change and limit the custody arrangement shared for the stepson,

forcing the Browns to engage a family law attorney and appear before the Court, at considerable personal expense.

43.

The family law matter regarding Mrs. Brown's stepson remains ongoing.

44.

Therefore, as a result of the arrest and imprisonment, Mrs. Brown and her family suffered a great deal of distress, embarrassment, heartache, and monetary loss.

**FIRST CLAIM FOR RELIEF 42 U.S.C. § 1983**
**Retaliatory Arrest in Violation of the First Amendment**

45.

Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 44 of this Complaint.

46.

42 U.S.C. § 1983 provides that:

> Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress…..

47.

Plaintiff in this action is a citizen of the United States and the Defendant to this claim are persons for purposes of 42 U.S.C. § 1983.

48.

Defendant to this claim, at all times relevant hereto, were acting under the color of state law in their capacity as police officers for ACCPD and their acts or omissions were conducted within the scope of their official duties or employment.

49.

To state a First Amendment retaliation claim, a plaintiff generally must demonstrate:

(1) she engaged in constitutionally protected speech;

(2) the defendant's retaliatory conduct adversely affected that protected speech; and

(3) a causal connection exists between the defendant's retaliatory conduct and the adverse effect on the plaintiff's speech." DeMartini v. Town of Gulf Stream, 942 F.3d 1277, 1289 (11th Cir. 2019)

50.

First, Mrs. Brown's speech was protected because "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers…The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." City of Houston v. Hill, 482 U.S. 451, 461 (1987)

51.

Officer Gonzalez's based his decision to make a custodial arrest of Mrs. Brown on Mrs. Brown's criticisms and challenges to Officer Gonzalez, when she said, "No, stop. Listen to me. I have a right to speak."

52.

Second, Officer Gonzalez's decision to arrest Brown adversely affected Mrs. Brown's speech because "[a]rresting someone for exercising the right to protected speech adversely affects that protection." Lambert v. Herrington, No. 21-10452, 2022 U.S. App. LEXIS 17939, at *17-18 (11th Cir. June 29, 2022) Officer Gonzalez placed Mrs. Brown under custodial arrest because of the way she spoke to him and the words she used.

53.

Third, Officer Gonzalez was motivated to make the custodial arrest because of Mrs. Brown's speech. Regarding the causal connection prong, "the plaintiff must show that the defendant was subjectively motivated to take the adverse action because of the protected speech." Castle v. Appalachian Tech. Coll., 631 F.3d 1194, 1197 (11th Cir. 2011).

54.

Officer Gonzalez's own words reveal his subjective motivation for the custodial arrest: "She should have just shut the f*ck up…Telling me 'No' and 'be quiet,' no. I ain't having that." (Gonzalez Body Camera, 44:40)

55.

Officer Thornton also understood Officer Gonzalez's motivation: "We was fixing to write everybody a citation and everyone go home…Her coming over here and starting up – we're going to take her to jail for that." (Nordquist Body Camera, 1:45 – 2:04)

56.

Any reasonable Kingsland Police Officer knew or should have known of Plaintiff's First Amendment rights at the time of the complained of conduct as they were clearly established at that time.

57.

No reasonable officer in Defendant's position could have believed there was probable cause that Plaintiff committed the offense of disorderly conduct or any other criminal act prior to her arrest.

58.

In sum, Plaintiff was arrested in retaliation after engaging in constitutionally protected speech and conduct and Defendant is not entitled to qualified immunity.

59.

The Defendants' actions, as described herein, were objectively unreasonable in light of the facts and circumstances confronting them and violated the Plaintiff's First Amendment rights.

60.

The Defendants' actions, as described herein, were also malicious and/or involved reckless, callous, and deliberate indifference to Plaintiff's federally protected rights.

61.

Defendants did so with shocking and willful indifference to Plaintiff's rights and their conscious awareness that they would cause Plaintiff severe injuries.

62.

The acts or omissions of Defendants were moving forces behind Plaintiff's injuries.

63.

The acts or omissions of Defendants as described herein intentionally deprived Plaintiff of her constitutional rights and caused him other damages.

64.

As a proximate result of Defendants' unlawful conduct, Plaintiff has suffered actual injuries, and other damages and losses as described herein entitling her to compensatory and special damages, in amounts to be determined at trial.

65.

Plaintiff is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. §1988, pre-judgment interest and costs as allowable by federal law.

66.

In addition to compensatory, economic, consequential and special damages, Plaintiff is entitled to punitive damages against each of the individually named Defendant under 42 U.S.C. § 1983, in that the actions of each of these individual Defendants have been taken maliciously, willfully or with a reckless or wanton disregard of the constitutional rights of Plaintiff.

## SECOND CLAIM FOR RELIEF 42 U.S.C. § 1983
### Unlawful Seizure in Violation of the Fourth Amendment

67.

Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 66 of this Complaint.

68.

Plaintiff also had the clearly established Constitutional right under the Fourth Amendment to bodily integrity and to be free from an unlawful seizure by law enforcement.

69.

Any reasonable Officer knew or should have known of these rights at the time of the complained of conduct as they were clearly established at that time.

70.

No reasonable officer in Defendant's position could have believed there was probable cause that Mrs. Brown committed the offense of disorderly conduct, trespassing, or any other criminal act prior to her arrest.

71.

Plaintiff was arrested in retaliation after engaging in constitutionally protected speech and conduct.

72.

At the time Defendant arrested and imprisoned Plaintiff, Plaintiff had not violated any laws.

73.

The Defendant's actions, as described herein, were objectively unreasonable in light of the facts and circumstances confronting them and violated the Plaintiff's Fourth Amendment rights.

74.

The Defendant's actions, as described herein, were also malicious and/or involved reckless, callous, and deliberate indifference to Plaintiff's federally protected rights.

75.

Defendant unlawfully seized the Plaintiff by means of objectively unreasonable, excessive and conscious shocking physical force, thereby unlawfully restraining the Plaintiff of her freedom.

76.

Defendant is not entitled to qualified immunity for his actions.

77.

As a proximate result of Defendant's unlawful conduct, Plaintiff has suffered emotional injuries, and other damages and losses as described herein entitling her to compensatory and special damages, in amounts to be determined at trial. As a further result of the Defendant's unlawful conduct, Plaintiff has incurred special damages and may continue to incur further other special damages related expenses, in amounts to be established at trial.

78.

Plaintiff is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. §1988, pre-judgment interest and costs as allowable by federal law.

79.

In addition to compensatory, economic, consequential and special damages, Plaintiff is entitled to punitive damages against each of the individually named Defendant under 42 U.S.C. § 1983, in that the actions of each of these individual Defendants have been taken maliciously, willfully or with a reckless or wanton disregard of the constitutional rights of Plaintiff.

### THIRD CLAIM FOR RELIEF
**(Georgia Common Law)**
**Negligent Investigation / Drafting Police Report**

80.

Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 79 of this Complaint.

81.

As a police officer, Defendant Gonzalez had a ministerial duty to Plaintiff to report the facts of the Outerbanks incident involving Plaintiff truthfully and accurately.

82.

As a police officer, Defendant Gonzalez had a ministerial duty to treat each person equally and to fairly make charging decisions.

83.

Defendant Gonzalez breached his ministerial duties in the following ways:

a. Total failure to include any eyewitness account of the incident, including accounts of McCoy and Walton beating Plaintiff;

b. Total failure to obtain any contact information of any of the eyewitnesses; and

c. Failure to charge McCoy with the crime of fighting and the crime of battery, while he charged Plaintiff with two crimes.

84.

As a proximate result of Defendant's unlawful conduct, Plaintiff has suffered emotional injuries, and other damages and losses as described herein entitling her to compensatory and special damages, in amounts to be determined at trial. As a further result of the Defendant's unlawful conduct, Plaintiff has incurred special damages and may continue to incur further other special damages related expenses, in amounts to be established at trial.

**FOURTH CLAIM FOR RELIEF (In the Alternative)**
**(Georgia Common Law)**
**Malicious Investigation / Drafting Police Report**

85.

Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 84 of this Complaint.

86.

As a police officer, Defendant Gonzalez had a discretionary duty to Plaintiff to report the facts of the Outerbanks incident involving Plaintiff truthfully and accurately.

87.

As a police officer, Defendant Gonzalez had a discretionary duty to treat each person equally and to fairly make charging decisions.

88.

Under Georgia law, government employees are liable for malicious breaches of discretionary duties.

89.

Defendant Gonzalez maliciously breached his ministerial duties in the following ways:

a. Total failure to include any eyewitness account of the incident, including accounts of McCoy and Walton beating Plaintiff;

b. Total failure to obtain any contact information of any of the eyewitnesses; and

c. Failure to charge McCoy with the crime of fighting and the crime of battery, while he charged Plaintiff with two crimes.

90.

Defendant Gonzalez's malicious intent is demonstrated by the following facts:

a. Within minutes of Officer Gonzalez's arrival on scene, he began expressing his personal animus toward Mrs. Brown. ("Do you want me to arrest you [Mrs. Brown] right now? … You need to calm down. Calm down. Calm down. You [Mr. Moore] need to talk to her real quick before I arrest her ass." (Gonzalez Body Camera, 9:04);

b. That animus continued throughout the investigation, as seen most clearly in the disparate treatment from those Officer Gonzalez favored (Mr. McCoy and Ms. Walton) and those he disliked (the Browns). For instance, despite that Ms. Walton was fighting and, in fact, hit Mrs. Brown, Officer Gonzalez only issued her a citation, stating, "this is going to be slap on the hand…[but] she's [Mrs. Brown's] going to jail, just so you know." (Gonzalez Body Camera, 47:24 – 48:15); and

c. In his investigation, Officer Gonzalez ignored the accounts of multiple eyewitnesses that Mr. McCoy also assaulted Mrs. Brown, and he instead relied solely on the accounts of Mr. McCoy, Ms. Walton, and other Outerbanks employees.

91.

As a proximate result of Defendant's unlawful conduct, Plaintiff has suffered emotional injuries, and other damages and losses as described herein entitling her to compensatory and special damages, in amounts to be determined at trial. As a further result of the Defendant's unlawful conduct, Plaintiff has incurred special damages and may continue to incur further other special damages related expenses, in amounts to be established at trial.

WHEREFORE, Plaintiff prays:

    a)    For general damages, including emotional distress;

    b)    For all special damages, including consequential damages according to proof;

    d)    For costs of suit herein incurred, including attorneys' fees;

    e)    For punitive damages;

    f)    For such other and further relief as the court may deem proper;

    g)    That Plaintiff have a trial by jury as to all issues so triable.

The 5th day of November, 2024.

                                        /s/ *M. Waite Thomas*
                                      M. Waite Thomas, Esq.
                                      Georgia State Bar No. 617667
                                      Attorney for Plaintiffs